### DAWSON et al. v. McWILLIAMS et al.
#### No. 10822.

Circuit Court of Appeals, Fifth Circuit.
Dec. 15, 1944.

See, also, 48 F.Supp. 538.

George Sergeant, of Dallas, Tex., for appellants.

Earl Pruet, of Oklahoma City, Okl., Reuel W. Little, of Madill, Okl., and Henry D. Akin, of Dallas, Tex., for appellees.

Before HUTCHESON, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

This is an action for damages for the alleged wrongful death of Archie McWilliams due to the negligence of appellants. The suit was brought under the laws of Oklahoma by the decedent's widow, as administratrix of his estate, for the benefit of herself and six minor children. It was tried to a jury and resulted in a verdict for $19,950, which was reduced by the court to $18,000. From a judgment on the verdict thus reduced appellants prosecute this appeal.

Paul B. Reis and Union Construction Company, as co-contractors, were in October of 1941 engaged in constructing a causeway for the Frisco Railroad across the Washita River between Marshall and Bryan Counties in the State of Oklahoma. Archie McWilliams was in their employ, and on October 6, 1941, was working in a pile-driving pit as one of a pile-driving crew. The pile-driver was held in position and operated by a crane supported by two cables attached to the

hoist machinery. These cables were manufactured by appellants, who specially prepared them for McWilliams' employer by inserting one end of each cable into an open socket and affixing it thereto. Each cable was attached to the top of the crane by means of said socket, and on said date, while in use, one of said cables pulled out of its socket, permitting the crane and other equipment to collapse and fall upon McWilliams, who was instantly killed. The cause of action is based upon the alleged negligence of appellants in failing properly to connect the cable and socket here involved. Appellee moves to dismiss the appeal on the grounds that the judgment was dated and filed on the 21st day of May, 1943, and that appellants' notice of appeal was not filed until the 26th day of August, 1943, more than ninety days after judgment; that, in total disregard of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, appellants failed to serve upon appellee, or her attorneys of record, a designation of the portion of the record, proceedings, and evidence to be contained in the record on appeal; that the record on appeal to this court does not contain a complete record of all proceedings and evidence in the case; and that appellants did not file in the court below or serve upon appellee, or her attorneys, as required by said Rules, a statement of the points upon which appellants intended to rely on appeal. In this court the parties have agreed that the verdict was returned and filed on May 8, 1943, and that a motion for a new trial was filed with the clerk on May 13, 1943; that the judgment was dated and filed on May 21, 1943, and that the motion for a new trial was overruled on June 2, 1943. It thus appears that the failure to serve the motion in no wise proved prejudicial to appellee as said motion in due course was overruled. Further, since the notice of appeal was filed within ninety days of the overruling of said motion, it was timely filed and the motion to dismiss on that ground is, therefore, overruled. As no prejudice to appellee is shown to have been occasioned by the failure of appellants to follow the rules referred to governing procedure on appeal, to dismiss the appeal for such infraction would be to inflict, under the circumstances, too harsh a penalty.[1]

Appellants in this court rely on three specifications of error, all dealing with the sufficiency of the evidence to support the verdict, for reversal of the judgment appealed from. The question, therefore, before this court on the merits is whether the court below should have instructed a verdict in favor of the defendants on the ground that there was not sufficient evidence to support a verdict. Appellants, defendants below, moved for a directed verdict at the close of plaintiff's case on the ground, among others, that the evidence "does not establish facts sufficient to create the cause of action in favor of the plaintiff * * * or to sustain a verdict in favor of the plaintiff * * *." At the close of all of the evidence, appellants moved the court peremptorily to instruct the jury to return a verdict in favor of defendants.

Appellee urges that this latter motion was not in accordance with Rule 50, Subdivision (a), which provides that a motion for a directed verdict shall state the specific ground therefor, and that the specifications of error based upon the contention that the evidence was insufficient presents nothing for review by this court. We think the two motions must be considered together; so considered, these motions do state the specific ground, namely, that the evidence does not establish facts sufficient to create a cause of action in favor of plaintiff or to sustain a verdict in favor of plaintiff.

We do not agree with the appellants, however, that the evidence is insufficient to support the verdict. The evidence overwhelmingly establishes that the cable was improperly inserted in and affixed to its socket and as a result the cable while in use pulled out of the socket, and permitted the crane to which it was attached to fall and kill McWilliams. The cable and the socket to which it was originally affixed were introduced in evidence, and the jury had the advantage of viewing both as each witness testified as to the proper manner of attaching them, and pointed to facts revealed by each that showed that the proper attachment had not been made.

Paul Reis, one of the co-contractors who was superintending the work at the time of the accident, a graduate civil engineer with many years of experience in building

---

[1] In this connection, see second and last sentence, Rule 73(a) of Federal Rules of Civil Procedure.

bridges, testified that the catalog issued by the appellants stated that a cable of the size in question had an approximate breaking strength of about 30 tons; that the crane in use at the time was supported by two such cables, which gave a total breaking strength of about 60 tons; that the load on the boom (crane) was about 8 tons, and the boom itself weighed another ton or two; consequently, that at the time "we were using at least four or five factors of safety." He further testified that properly to connect and affix a cable to a socket, the strands of the cable should be separated and thoroughly cleaned with muriatic acid, then the strands should be put into the socket and spread out and babbitt or zinc poured in to fasten the cable into the socket. He further stated that he examined the cable and the socket immediately after the accident and found the wires of the cable greasy, that they had not been spread out, and as a consequence they had stripped out of the babbitt poured into the socket; that it was impossible to detect this defect prior to the accident because the babbitt covered up the material and hid the defect. He also stated that the socket, properly connected, would have developed the approximate strength of the cable.

Other witnesses for appellee, with many years of experience with cables and their fitting, who had examined the cable and the socket, testified that their examination revealed that the connection was faultily made, and stated as did Reis that, properly connected, the socket would have developed the strength of the cable.

In the face of this evidence, appellants do not now contend that the socket was properly attached to the cable. Their contention is that they had no knowledge that the cable and socket would be given the use to which they were put; that the co-contractors had sent the order to them by a Mr. R. J. Darrah, who, in submitting the order, stated that the cables were intended to brace the center of the boom (crane) which had sagged; and that the cables were attached to sockets according to Darrah's verbal specifications and a diagram, showing the use to be made of the cables and sockets, discussed by Darrah with their foreman. Darrah was not available as a witness when the case was tried and appellants failed to produce the diagram which the evidence strongly indicates Darrah delivered to them, nor did appellants give any

explanation for such failure. It may well be that the jury inferred from this that the diagram, if produced, would have proven prejudicial to appellants' case, and as a consequence placed little or no value on the defense urged or on the testimony in support thereof.

Appellants' purchasing agent on cross-examination admitted that at the same time the two cables were ordered, two longer cables of the same size were ordered; that he knew the longer cables were to be used for supporting the boom (crane), and that the shorter cables (including the one that gave way and caused the injury) were supposed to be of the same weight-carrying capacity. He testified:

"Q. The two 60-foot cables that were shown * * *, they were to support the crane and they were ordered as a part of this order, weren't they? A. Yes, sir.

"Q. And they were the same capacity as the 2-by-30, weren't they? A. That is right.

"Q. And had the same weight-carrying strength, didn't they? A. Yes, sir."

Appellants' shop foreman testified that he had been in the employ of appellants for some eight years; that he helped prepare the cables with sockets to fill the order received from the co-contractors. On cross-examination, he testified:

"Q. Did you intend to make the joint as strong as the cable itself? A. Yes, sir.

"Q. You did intend to do that? A. Yes, sir."

The cable and socket had been in actual use less than one day when the accident occurred. From the evidence the jury had the right to conclude that the socket was improperly fastened to the cable; that had the socket been properly fastened, the cable and socket would have developed the strength of the cable; that the use being made of the cable and socket at the time of the accident required them to support a weight far below the strength of the cable as advertised by appellants; that the specifications and the diagram furnished appellants brought home to them knowledge of the use to which the cable and socket would be put; and that the accident was due to the faulty connection of the cable and socket, the result of faulty workmanship on the part of appellants.

■■ The accident from which appellee's cause of action arose occurred in

42

Oklahoma; this case, therefore, is governed by the laws of that State. In Crane Company et al. v. Sears, 168 Okl. 603, 35 P.2d 916, 922, the Supreme Court of Oklahoma, enunciating the law governing the liability of a manufacturer in cases like the present, said:

"The later, and as we think the better-reasoned cases, support the proposition that where a manufacturer, with information before him of the nature of the use to which an article manufactured by him is to be put, and from the very nature of things must know that if, when put to such use, if defective, it will be imminently dangerous to persons who he knows will come in contact therewith, a duty rests upon such manufacturer to use ordinary care to ascertain the condition of the article to see that it is safe. If he fails to exercise ordinary care in this regard, and as a result sells it in a defective condition, he is liable for personal injuries proximately resulting therefrom, to that class of persons who must necessarily come in contact with such article.

"Such, in effect, was the rule applied by the trial court. The rule is, as we view the law, the correct one. We must put aside the idea that in such circumstances the duty to guard life and limb grows out of contract and nothing else.

"In this case there is evidence tending to show that Crane Company had knowledge of the nature of the use to which the flanges it sold, including the one that burst and caused the injury, would be put; that it had the plans of the power plant and the information that the flanges would be used in an 8-inch steam line running from the boiler to the engine, which would be called upon to convey steam under a pressure of 125 pounds per square inch. From the very nature of things it knew that when the power plant would be put in use, of necessity there must be attendants such as firemen and engineers who would daily come in close contact with the steam line."

The Supreme Court of Oklahoma, in Crane Company et al. v. Sears, supra, cites with approval the case of Heckel v. Ford Motor Co., 101 N.J.L. 385, 128 A. 242, 243, 39 A.L.R. 989. The court in that case said: "The manufacturer of an appliance, that will become highly dangerous, when put to the uses for which it is designed and intended, because of defects in its manufacture, owes to the public a duty, irrespective of any contractual relation, to use reason-

able care in the manufacture of such appliance, and such duty calls for and requires the exercise of reasonable care in applying reasonable tests to detect defects and deficiencies in the appliance. This duty is not met by a showing that reasonable tests are required, but it must appear that such tests are applied and their application was made in a reasonably careful manner."

The cases cited by appellants as holding contrarily are clearly distinguishable upon their facts.

█ Appellants in their brief also argue that appellee, subsequent to McWilliams' death and prior to the institution of the present suit, sued the co-contractors in the District Court of Marshall County, Oklahoma, for damages arising out of the death of McWilliams; that said suit was settled by the payment of $5,000 to appellee and the taking from her of a covenant not to again sue the co-contractors; and that, thereafter, the present suit was brought in the District Court of the United States for the Northern District of Texas against appellants for damages growing out of the same injuries. Because of these facts, appellants contend that the court below should have sustained a plea in abatement and dismissed said suit; or that evidence thereof should have gone to the jury either in bar of the present suit or as a lessening of the damages. In their assignment of errors defendants make no such contention, and while defendants did file a plea in abatement in the court below, the overruling of such motion is not assigned as error in this court. If considered, however, the plea is without merit. Appellee, upon the payment of $5,000, executed a covenant not to sue the co-contractors or the Liberty Mutual Insurance Company, their insurer, again in any court, and assigned to said Liberty Mutual Insurance Company all amounts recovered by her by virtue of any settlement with or suit against appellants based upon the injury and death of Archie McWilliams and damages resulting therefrom to the extent of the sum of $5,000. The record is barren of any evidence indicating or showing that the co-contractors and appellants were joint tort-feasors. The covenant and assignment executed by appellee suggests a settlement by the co-contractors' insurer of a liability within its coverage arising from the negligent act of third parties. As appellants' negligence created the liability, which the co-contractors' insurer settled

with appellee, the insurer in turn was subrogated to appellee's claim against appellants to the extent of the amount the insurer paid. This being true, the fact of the covenant had no legal effect to bar this suit, and evidence of the amount paid thereunder was not admissible to reduce the recovery awarded or for any other purpose. The court below did not commit error in this respect.

In Farris et al. v. Interstate Circuit Inc., 116 F.2d 409, 411, this court, in considering the rule to be followed when a motion for a directed verdict is filed on the grounds of insufficiency of the evidence, said: "If, when all of plaintiff's evidence is fairly considered in the light most favorable to him, and every reasonable inference fairly to be drawn therefrom is given full effect, a jury might have found in his favor, it is improper to direct a verdict for the defendant."

We agree with the court below that the evidence made out a case for jury determination. Appellants' motion for a directed verdict was properly overruled.

Judgment affirmed.