Paul BOWER, d/b/a Bower Implement Company, Plaintiff in Error,

v.

Jessie CORBELL, Defendant in Error.

No. 40700.

Supreme Court of Oklahoma.

Oct. 26, 1965.

Hudson, Hudson, Wheaton, Kyle & Brett, Tulsa, for plaintiff in error.

Norman & Wheeler, and Bonds, Matthews & Mason, Muskogee, for defendant in error.

BERRY, Justice.

Plaintiff sued to recover damages for personal injuries. The action was based upon the alleged negligence of defendant, a retail implement dealer, who sold the machine involved to plaintiff's husband. The issues were heard and determined by a jury in plaintiff's favor and judgment rendered against defendant who brings this appeal.

The uncontroverted facts disclose that on December 7, 1959, plaintiff's husband purchased an MBS power saw from defendant. This saw, mounted on bicycle-type wheels, was powered by a 5¾ horsepower gasoline engine. Power was transmitted to a 20-inch circular blade attached to a rigid shaft at the front of the machine by means of a belt and pulley. The mechanical design was such the blade could be so positioned as to allow the saw to be operated either horizontally or vertically. The saw was operated from two handle bars at the rear, which formed part of the frame, upon which the controls were mounted. The position of the blade presumably would be maintained by means of setscrews intended to hold the shaft in the desired position. When the setscrews were loosened the shaft would turn, thus permitting the saw blade to change position.

The morning following purchase plaintiff's husband, assisted by one Stephens, operated the saw for approximately one hour with the blade in horizontal position, felling trees which varied in diameter from 2–6 inches. The limbs then were trimmed in preparation for the logs, or poles, to be sawed into firewood. After noon they returned to work accompanied by plaintiff and Stephens' wife. Plaintiff's husband was operating the saw with the blade in a vertical position cutting the poles into stove lengths, as Stephens fed the poles into the saw at right angles. This was accomplished by pushing the logs across another log laid upon the ground, which kept the saw above the ground and allowed the sawed lengths to roll away from the saw.

Plaintiff and Stephens' wife had been working some distance away piling brush, but plaintiff returned to where the men were working, approaching the saw from the right side. Plaintiff then went a slight distance in front of and to the right of the saw and stooped over to pick up a stick of wood. While in this position, the saw "screamed" and she felt it cut her body. The blade struck plaintiff, cutting her head and back and causing severe and permanent injuries, the nature and extent of which are not involved herein. After the accident the setscrews were found to have vibrated loose, allowing the saw blade to tilt some 5–10 degrees to the right of the vertical position in which it was being operated prior to the accident.

Initially the action was against both the manufacturer and retailer, but was dismissed without prejudice as to the manufacturer prior to trial. The petition alleged negligence on part of the manufacturer in failing to use due care in construction, inspection and testing of the machine. Negligence was charged against defendant in that, having assembled the machine, at the time of sale and delivery the saw was in a defective condition and dangerous both to the operator and persons in the vicinity of the operation, which facts could have been ascertained by proper inspection which defendant had neglected to make. Further, that the saw was defective in that the setscrews, which held the shaft supporting the blade, had no recess in which to fit, making it impossible to tighten the screws sufficiently to prevent the shaft from turning when the saw was in operation. Plaintiff alleged her injuries resulted from her husband's use of the saw, in that when attempting to cut a log the saw, because of defective construction, turned on its side, began vibrating violently and clawed its way over the log and struck plaintiff, causing injury solely by reason of negligent construction and inspection of the power saw.

Defendant's answer alleged plaintiff's contributory negligence, concurrent negligence of plaintiff's husband in failing to use ordinary care in use of the equipment, failure to inspect the saw prior to attempting to use same and failure to make certain the saw was safe prior to permitting his wife to work in close proximity. Further, if the saw were defective in any particular, same was a latent defect which defendant could not have discovered by exercise of ordinary care; hazards coincident to use of the saw should have been apparent to person of ordinary intelligence so that plaintiff's conduct amounted to assumption of risk. To these allegations plaintiff replied by general denial.

The evidence, including the factual matters stated above, was not in serious conflict. When the accident occurred the saw "jumped" sideways several feet, struck plaintiff and landed bottom side up. When running, the saw was too powerful to hold, and vibrates so that it shakes the operator. The seller did not advise the purchaser about the setscrews, and that this was the only means of holding the shaft in place, but only advised the saw was ready to go.

Some time after the accident Stephens bought the saw from Corbell. When he operated the saw he carried a wrench and tightened the setscrews about every 15 minutes. If this were not done the screws became loose and the blade would turn because the saw vibrates all the time it is in operation. Stephens, who was helping saw wood at the time of the accident did not hear the saw "scream", but did see the saw jump sideways. After buying the saw he never used it as much as an hour without checking. Sometimes the screws did not need tightening but at other times this would be needed. On one occasion a setscrew was gone. Prior to the accident he did not know that vibration of the saw would shake the setscrews loose and thus allow the blade to turn. He also testified the saw would "buck" when in use and, although it had never gotten away from him, he learned to hold it with a very tight grip.

A witness experienced with gasoline-powered machines of this type testified he had examined the saw; the setscrews were intended to keep the shaft locked in position and prevent the blade from turning; if the setscrews became loose the shaft and blade could turn a complete circle; the vibration would cause the setscrews to become loose within 15–30 minutes. The witness stated in his opinion the setscrews were not recessed into the shaft, because he examined the machine before trial and was able to twist the shaft which could not be done if they were recessed.

Defendant's evidence concerning the sale coincided with the purchaser's (Corbell) testimony, except for testimony that before sale the machine was started, he was shown the service points and how to operate the machine, and the saw was engaged in demonstration. There also was testimony that a pamphlet and booklet describing servicing of the engine and the manufacturer's warranty probably were tied on the machine. The purchaser's testimony was that the machine neither was demonstrated nor the means of operation shown him at the time of purchase, but that he relied upon what he was told by the seller.

Defendant's shop foreman testified he assembled these saws on a commission basis. The engine was bolted to the frame and he installed the belt and blade on the saw, then checked all bolts and the setscrews to see if same were tight. The machine would be started, allowed to run a few minutes, then shut down and checked over again. Following this the foreman affixed a decal to the saw "Sale and Services by Bower Implement Company." The witness had assembled approximately 150 machines over the years and never had known of any difficulty with the setscrews before this instance.

Defendant's contentions on appeal are based upon the premise the evidence did not establish failure to recess the setscrews into the shaft would be a defect; that, even assuming the setscrews were not recessed and this was a defect, same would be a defect in design only and would constitute a latent defect for which a retailer could not be liable. This premise is evolved from the so-called majority rule stated in Frumer-Friedman Products Liability, Sec. 18.-04(2), pp. 456 et seq.:

"(a) Majority View; No Duty to Inspect or Test For Latent Defects. It is the majority view that a retailer who purchases from a reputable manufacturer and sells the product under circumstances where he is a mere conduit of the product is under no affirmative duty to inspect or test for a latent defect and, therefore, liability cannot be based on a failure to inspect or test in order to discover such defect and warn against it. * * *"

Defendant's argument hereunder is presented under this proposition:

"THERE IS A LACK OF EVIDENCE OF NEGLIGENCE OR BREACH OF DUTY ON THE PART OF DEFENDANT BECAUSE DEFENDANT AS A RETAIL DEALER IS NOT LIABLE FOR A MANUFACTURER'S DEFECTIVE DESIGN, NOR DOES THE LAW IMPOSE ANY DUTY UPON HIM WHEN HE BUYS FROM A REPUTABLE MANUFACTURER TO INSPECT OR TEST FOR LATENT DEFECTS. THE COURT THEREFORE ERRED WHEN IT OVERRULED DEFENDANT'S MOTION FOR A DIRECTED VERDICT."

Before consideration of controlling issues, we note certain of defendant's arguments under this proposition to the effect that what caused the saw to jump and strike plaintiff was left to pure conjecture. And, although the evidence showed the setscrews had vibrated loose before the accident, the screws had vibrated loose many times while Stephens owned the saw, but never jumped during his periods of operation because he always kept a firm grip on the handles. Thus defendant says

it is "far more probable" plaintiff's husband allowed the saw to get away from him because of his own failure, rather than to conjecture that this resulted from the loose setscrews. Since this argument goes only to the weight of the evidence it does not require further discussion, other than to observe that circumstantial evidence may be relied upon to prove negligence. And, in civil cases such evidence need not rise to the degree of certainty which will exclude every reasonable conclusion other than that arrived at by the jury. Coe v. Esau, Okl., 377 P.2d 815. It was necessary only that plaintiff's evidence, and the reasonable inferences to be drawn therefrom, make it appear to the jury's satisfaction that the accident occurred as the result of and in the manner alleged. In passing upon the matter the jury was entitled to exercise its own experience, knowledge and understanding in arriving at its determination of the facts.

The primary argument urged under the first contention is that a vendor of a chattel manufactured by a third person, who neither knows nor has reason to know, that it is, or is likely to be, dangerous, is not liable for harm resulting from the dangerous character or condition of the chattel although the seller could have discovered this by inspection or test before the sale. Cited in support: Restatement of the Law of Torts (1948 Revision), Sec. 402; Frumer-Friedman, Products Liability, supra; Burgess v. Montgomery Ward & Co., (CCA 10) 264 F.2d 495.

This action is founded upon negligence alone, and not upon products liability as commonly understood. The 1948 Revision, supra, apparently added a condition by insertion of the phrase "reason to know". In Burgess, supra, such phrase was said not to imply any duty to ascertain an unknown fact. However, it is observed that the comments in the original statement dealing with Sec. 402, noted that a retailer, in the cursory inspection given to goods which are handled for purposes of sale, may have opportunity to observe indications which as a competent dealer in such goods should cause him to

realize that such goods are, or are likely to be, in a dangerous condition for use. Thus it is said that a retailer must utilize both the special opportunity to observe the condition of the goods and the special competence that such a dealer should have to realize the dangerous implications of conditions which, though observable, are not likely to be appreciated by the purchaser.

The theory just expressed (Restatement of Law of Torts) basically declares only the exceptions to the general rule of the vendor's non-liability to third parties for negligence in sale of articles which he handles, expressed at length in Huset v. J. I. Case Threshing Mach. Co., 8 Cir., 120 F. 865, 61 L.R.A. 303. In that case the applicable exceptions are stated:

> "The first is that an act of negligence of a manufacturer or vendor which is imminently dangerous to the life or health of mankind, and which is committed in the preparation or sale of an article intended to preserve, destroy or affect human life, is actionable by third parties who suffer from the negligence.
>
> \* \* \* \* \* \*
>
> "The third exception to the rule is that one who sells or delivers an article which he knows to be imminently dangerous to life or limb to another without notice of its qualities is liable to any person who suffers an injury therefrom which might have been reasonably anticipated, whether there were any contractual relations between the parties or not. \* \* \*"

As to whether this power saw was inherently or imminently dangerous, the defendant quotes the text definition from 46 Am.Jur., Sales, Sec. 815, and concludes that in view of this definition the power saw was neither *inherently* nor *imminently* dangerous. And, defendant says that under Auten v. Livingston, 201 Okl. 467, 207 P.2d 256, plaintiff was required to prove defective construction for the saw to be considered as imminently dangerous.

The cogent answer to the argument premised upon whether inherently or imminently dangerous is found in MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1051, p. 1054, L.R.A.1916F, 696 wherein Cardozo, J., said:

> " * * * Subtle distinctions are drawn by the defendant between things inherently dangerous and things imminently dangerous, but the case does not turn upon these verbal niceties. If danger was to be expected as reasonably certain, there was a duty of vigilance, and this whether you call the danger inherent or imminent. * * * "

■ In Burgess, supra, relied upon by defendant, the device involved was a ladder, a simple device in common use, but which was dangerous by reason of a latent defect not ascertainable by an untrained person. That case did note such device was not comparable to poisons, explosives, and certain types of mechanical contrivances, and with this statement there must be general agreement. We are convinced that an instrumentality such as involved herein, which from its very nature and operation makes possible injury or death at any instant to those in the area of use, necessarily must be denominated as inherently dangerous. An automobile is not inherently dangerous within itself. But when serviced and set in motion it becomes a contrivance of an inherently dangerous nature. Where reasonably certain to place life and limb in danger if negligently made or serviced it is a thing of danger. MacPherson v. Buick Motor Co., supra. As to our application of the rule concerning an inherently dangerous instrumentality, see LaFayette v. Bass, 122 Okl. 182, 252 P. 1101.

■ Liability in this case must depend upon whether the retailer owed any duty of care to plaintiff, and if so whether such duty was breached. The evidence relative to handling the saw prior to recommending it to the purchaser as "ready to go" has been mentioned. Admittedly defendant partially assembled the components. De-

fendant's shop employees were paid for rendering this service. From this it must follow that some duty devolved upon defendant to test and inspect properly before sale. The evidence was that defendant's employee purportedly tested the saw by running the engine and again checking the belts before placing the "sold and serviced" decal thereon. There was no effort to make an actual test of the saw by an effort to use it for the intended purpose. The only evidence of defendant's use or experience with the saw was lack of knowledge of any bad experience with others previously sold. Such evidence neither can be classed as positive proof these saws always were safe for the intended purpose nor proof that even if defective such defect would not have been discovered by exercise of proper care.

The real question presented is whether defendant, by simply making the inspection and test noted, fulfilled the duty owed to a prospective purchaser, or whether the accepted rules of care required further inspection and tests of the working parts. The reasonableness of the inspection and tests used must depend upon the circumstances of the particular case. The inherently dangerous character of the machine must be acknowledged. It is further argued that neither defendant nor the employee (foreman) had knowledge, or from known facts should have realized, this saw was dangerous or had latent defects, or that they knew anything more about power saws than the purchaser. However, since the foreman had assembled 150 saws, the jury undoubtedly considered defendant, through this employee, either knew far more about power saws than the purchaser, or that defendant was negligent in placing responsibility in such employee's hands.

In J. C. Lewis Motor Co., Inc., v. Williams, 85 Ga.App. 538, 69 S.E.2d 816, the defendant sold a tractor and tobacco transplanting machine intended to be used as a unit, but failed to supply or install a pipe necessary to divert the tractor's exhaust fumes away from those who operated the

planter. While the machinery was being used for the purpose intended, the purchaser's wife was overcome from inhalation of carbon monoxide. Neither the purchaser nor plaintiff knew that use of the machine without the exhaust attachment was dangerous, they were not so advised or warned by defendant's agents, and the printed instructions for use contained no warning. In holding the petition stated a cause of action for damages, that court determined plaintiff was within a class of persons toward whom defendant owed a duty of reasonable care to inform them of the danger involved under the circumstances, as it should have realized use of the machinery without the attachment would be dangerous to those who were not warned, and did not realize the danger.

The conclusion reached was placed squarely upon the rule, Restatement of the Law of Torts, Sec. 388, that one who supplies a chattel for another to use, is liable for bodily harm resulting from use in the proper manner by the person for whose use it is supplied: (1) if the supplier knows or from facts known should realize the chattel is, or is likely to be, dangerous when used for purpose intended; (2) has no reason to believe those who use the chattel will realize the dangerous condition; (3) fails to exercise reasonable care to warn of the dangerous condition or facts likely to make it be so. The basis of the rule rests in the fact that in such cases the question arises as to whether the person (vendor) supplying the chattel is exercising the reasonable care owed to persons who are to use it, by informing the person through whom the chattel is supplied as to its actual character.

In Ringstad v. I. Magnin & Co., 39 Wash. 2d 923, 239 P.2d 848, that court considered the duty of a retailer, under the rule in Sec. 402 of the Restatement, and concluded there existed no duty to inspect for defects. But, in McKinney, etc. v. Frodsham et al., 57 Wash.2d 126, 356 P.2d 100, the same court reconsidered the question and noted the text rule contemplated defects discoverable by "factory-type inspection" by a new car dealer, which would be unjustified in terms of the possibility of latent defects. See 99 A.L.R. 243. But, sustaining a judgment entered against a retail automobile dealer, the court approved an instruction which advised the jury a retail dealer owed a duty to inspect before sale, and was charged with knowledge of what a reasonable inspection in the exercise of ordinary care would disclose; the dealer was not required to dismantle the car to make inspection, but was "required to observe the vehicles as received, observe whether they operate properly, and investigate and check the operation of parts or appliances with respect to safety before delivery. * * * In making such inspection and examination, the dealer is required to utilize the peculiar opportunity and competence which a dealer in such automobiles has or should have."

This instruction closely followed the text statement in 5A Am.Jur., Automobiles and Highway Traffic, Sec. 662. In view of what was declared the applicable rule of law the court stated the controlling question was not whether a defect existed, but rather whether the evidence was such the jury reasonably could infer such a defect existed as to be discoverable upon a reasonable observation and inspection at the time of sale. The court concluded the jury fairly could and did find that the combination of design, together with other circumstances of which a competent mechanic would be aware, should have imparted knowledge of the potential danger, and led to the conclusion that such defect would have manifested itself under a proper test. We accepted the substance of this rule in Hembree v. Southard, Okl., 339 P.2d 771, cited by plaintiff, involving inspection and testing of a used automobile before sale.

Defendant had under its control, for retail sale to the general public, a mechanical device which was dangerous unless properly constructed, completely maintained and carefully operated during use. In these circumstances defendant owed to the purchaser, and others who might reasonably be expected to be within proximity to the machine during use for the purpose for

which intended, the duty of using the degree of care to see that it operated safely commensurate with the danger to which such persons would be exposed when the machine was in use. The evidence was such that the jury was required to decide whether the dangerous defect in the machine could, or would, have been discovered upon reasonable observation, inspection or testing, and thus defendant should have imparted notice to the purchaser of the potential danger to those rightfully using the instrumentality for the purpose intended.

The multitude of cases bearing upon the question of responsibility for negligence defy citation or discussion. As evidenced by the briefs in this appeal, decided cases reflect as great a variety of situations, involving as many different devices or products, as the daily needs and wants of the buying public require. It would be impossible to compare and discuss the conclusions reached, or the reasoning or principles upon which the result in particular cases was based. Substantial text and case authority may be offered in support of practically any theory of liability, or non-liability, which a party chooses to assume.

The diversity in our own decisional law is discernible by comparison of Hembree v. Southard, supra, and Auten v. Livingston, supra. In Hembree the rule of liability was based upon failure of duty to inspect and test to discover defects which were discoverable by exercise of ordinary care. In Auten, supra, a manufacturer was held not responsible for injury resulting from a bolt in the machine loosening and striking the plaintiff. Therein we reviewed decisions from other courts, and our own decision in Crane Co. et al. v. Sears, 168 Okl. 603, 35 P.2d 916. And, upon the authority of Sears, the manufacturer was released from liability upon grounds that the controlling rule that the machine, a vulcanizing machine, was not inherently dangerous as a matter of law and not defective. Thus our own decisions reflect the universal variance in reasoning and result.

This appeal presents an issue as to which we are required, by exigencies of the present era, to determine and declare a sound and legally defensible rule of conduct applicable in cases of vendors of inherently dangerous items sold to the general public. The reason and need were succinctly stated in MacPherson, supra, thus:

"* * * Precedents drawn from the days of travel by stagecoach do not fit the conditions of travel today. The principle that the danger must be imminent does not change, but the things subject to the principle do change. They are whatever the needs of life in a developing civilization require them to be."

And, in Ebbert v. Philadelphia Electric Co., 330 Pa. 257, 198 A. 323, p. 327, the result of which was criticized severely in Restatement of Law of Torts, the reason for laying aside verbal formulae and examining each case upon its special facts was stated:

"* * * The public safety and security against the fatal or injurious consequences of negligence in demonstrating and testing mechanical devices for common public use and in which lurk obvious possibilities of danger is a consideration to which courts cannot be indifferent. An imperative social duty requires a vendor of a mechanical device to take at least such easily available precautions as are reasonably likely to prevent serious injury to those who by using such a device may be exposed to dangers arising from its defective construction."

█ Evolved from text principles and judicial declaration in modern cases such as McKinney, supra, we are of the opinion a rule consonant with reason and justice may be stated:

Where a vendor supplies a purchaser with a device or instrumentality, and in exercise of ordinary care knows or should know if same is defective it will be dangerous to all who come in contact there-

with during use for the purpose for which intended, the vendor owes a duty to ascertain the condition of the instrumentality by exercising reasonable care to see that it is safe for the use for which intended. A vendor who fails to exercise ordinary care to ascertain the true condition and safety of the instrumentality, and chooses to sell without notice or warning of the dangerous characteristics and dangers inherent in use thereof is liable for injuries proximately caused by use of the instrumentality.

■ The conclusion stated removes need for discussion of defendant's argument relative to liability herein being that of the manufacturer. Neither is it necessary to deal with the error asserted in the giving of an instruction dealing with defendant's duty to inspect the power saw prior to sale. However, having pointed out that inspection and testing do not require a factory-type inspection but rather that which would, or should, make defects which reasonably could be expected to cause injury apparent to a dealer, the claim that to require any inspection or testing would create an unreasonable burden is not persuasive.

One further argument justifies discussion. Plaintiff. alleged a defect in the saw by failure to recess the setscrews which were affixed for the obvious purpose of holding the shaft in place to prevent the saw blade from turning while in operation. Plaintiff's expert witness, a mechanic who examined this machine prior to trial, testified that in his opinion the setscrews were blunt-end screws and not recessed into the shaft. This opinion was based upon the fact that in examining these screws the witness was able to twist or turn the shaft manually, whereas had they been recessed the shaft probably could not be turned. Admittedly this was not the best evidence concerning this matter, but it was evidence which the jury was entitled to consider as to the exact construction of the shaft and setscrews. Why neither party saw fit to present the matter to the jury by physical evidence is unexplained. Undoubtedly the

jury considered this fact in resolving the question.

Along this same line, defendant reiterates the argument that the witness Stephens did not know what caused the saw to jump and saw nothing happen to the saw; that he had owned the saw for three years after the accident during which time the screws had to be tightened, but the saw never had "jumped" while he was using it; that the saw jumped because the blade got into something. Defendant says there was no reason the loose screws caused the saw to jump with plaintiff's husband but not with Stephens, and thus concludes there was nothing except surmise and speculation to show the loose setscrews caused the saw to rotate out of control. From this, defendant urges that the matter involved only a choice of probabilities, which was insufficient to justify submission of the case to the jury.

■ The jury was entitled to rely upon common knowledge and experience in drawing inferences and reaching conclusions upon the basis of the facts proved. The salient and uncontroverted facts were that (1) the shaft turned because the setscrews did not hold; (2) this permitted or caused the revolving saw blade to turn to the right 5–10 degrees; from this position the blade caught, hung, and then jumped against plaintiff. Within common knowledge of ordinary man a rapidly revolving wheel such as the circular saw in question, will jump or change positions suddenly when it meets an obstruction. The jury knew this fact and properly could determine that loosening of the setscrews allowed the blade to turn and catch, or hang, and thus caused the saw to jump. These were matters within knowledge and observation of persons of ordinary intelligence.

■ Plaintiff's evidence was not required to exclude every conclusion inconsistent with defendant's liability. Where the circumstances disclosed by evidence and legitimate inferences remove the case from the realm of conjecture or speculation and bring it within the sphere of legitimate and rational inferences, a jury verdict based there-

on is properly supported by competent evidence. Coe v. Esau, supra.

Judgment affirmed.

JACKSON, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, IRWIN and LAVENDER, JJ., concur.

HODGES, J., dissents.