**Tommy Lee BARNHART, Plaintiff in Error,**

v.

**FREEMAN EQUIPMENT CO., Inc., an Oklahoma corporation, and Rockwell-Standard Corporation, a foreign corporation, Defendants in Error.**

No. 41489.

Supreme Court of Oklahoma.

Feb. 20, 1968.

Rehearing Denied June 18, 1968.

Sanders, McElroy & Whitten, Floyd L. Walker, Tulsa, for plaintiff in error.

Hudson, Wheaton & Brett, Tulsa, for Freeman Equipment Co., Inc.

Alfred B. Knight, Tulsa, for Rockwell-Standard Corp.

BERRY, Justice.

Plaintiff in error was plaintiff in an action against three corporation defendants, including these defendants in error, to recover damages for personal injuries. At the close of plaintiff's case the trial court sustained separate demurrers to the evidence interposed by these defendants and dismissed the action as to each. Plaintiff has appealed from such orders and judgment. The sole issue involves the propriety of the trial court's action. Some amplification of the facts will be of assistance in determining this issue.

International Harvester Corporation builds truck-tractors for sale to the public. Rockwell-Standard Corporation designs and manufactures components used in the automotive field. In 1961 these items included a center point steering axle and tie rod assembly sold to, and incorporated in the steering mechanism of International's trucks. Freeman Equipment Company was International's distributor and service representative located in the Enid, Oklahoma, area. At the time of this accident the plaintiff was employed as a truck driver by Consumers Cooperative in that city. Ref-

erence to defendants should be understood to include only Rockwell and Freeman for the purposes of this appeal. A companion case, involving plaintiff's appeal from a judgment in favor of International in Case No. 41,631, 441 P.2d 1000 is the subject of a separate decision.

On February 10, 1961, Consumers purchased from International through its distributor in Kansas City, Missouri, 23 truck-tractors, of a type designated as "Emeryville." Defendant Freeman received a commission on the sale. Part of the steering mechanism of a motor vehicle consists of a tierod which connects the front wheels and moves back and forth as the wheels turn in steering. Rockwell designed and manufactured what was designated as the Timken center point steering (FE 970) axle, a part of which involved use of a solid steel tierod 1.63 inches in diameter. Upon putting the trucks in service Consumers discovered the solid tierod was so flexible as to cause the front wheels to shimmy and also produce excessive tire wear.

The Emeryville type truck was so designed that the left front shock absorber was mounted back of the axle on the bottom leaf of the left spring. The right front shock absorber was mounted in front of the axle. Turning of the front wheels resulted in as much as two inches forward movement of the tierod but, as originally designed the solid steel tierod did not come into contact with the bottom of the left shock absorber. The defective condition was reported to International on March 15, 1961, which then reported this to Rockwell. In an effort to correct the defective tierod Rockwell changed the original design and furnished a tubular steel replacement tierod 2.55 inches in diameter. Both defendant and International advised Consumers of the need for modification.

Rockwell furnished the replacements to International without cost under the warranty, but shipped the parts directly to Freeman on May 29, 1961, with whom International had made arrangements to han-dle installation at no cost to Consumers. Freeman began the work and completed the installation on twelve trucks, including Unit 465 on June 5, 1961. The tierod originally designed did not contact or bind upon the anchor of the left front shock absorber. Installation of the larger (2.55 inch) tierod resulted in further complications, because turning of the wheels caused the replacement to come into contact with and rub against the left front shock absorber. There was evidence that International knew the modified installation resulted in this interference between the tierod and the shock absorber as early as March, 1961.

In order to correct this difficulty Freeman made a second modification. The left front spring leaf which served as a shock absorber bracket was removed. A new hole was drilled one inch closer to the center, thus moving the bracket an inch forward. Completion of this modification required use of a longer bolt to rebolt the spring leaves because the leaves spread when disturbed. This second modification was made on some units upon installation of the new tierod, while on others the changes were made separately. Freeman installed the replacement tierod on Unit 465 (June 5, 1961) but did not move the shock absorber forward to effect clearance.

On June 17, 1961, in pursuance of his employer's business, plaintiff was driving Unit 465 on State Highway 10, approximately two miles north of Gore, Oklahoma. At this point plaintiff started to negotiate a left hand curve. When necessary to turn the wheels back to the right the truck could not be straightened out because the steering was stuck. In an effort to avoid an oncoming vehicle plaintiff " * * * gave it all I had to pull it around." The truck came back too far and went toward the ditch, and at the same time plaintiff heard a "real loud, sharp crack", which was the last thing he remembered. Plaintiff sustained serious, permanent injuries as the result of the truck overturning on the right shoulder of the highway.

Plaintiff charged the accident was caused both by negligence of defendants in respect to the design, installation and failure to inspect the steering system and front suspension of this vehicle; in making and delivering a dangerous instrumentality; breach of an implied warranty of fitness, and failure to warn plaintiff and his employer of the dangerous, latent condition of the truck, since in absence of warning plaintiff relied upon defendants' representations of fitness.

Defendants answered by general denial, plea of unavoidable accident, and special plea of plaintiff's contributory negligence.

The president, and other employees of Freeman, testified it was normal procedure when installing tierods to make inspection in order to determine whether the new installation functioned properly, and did not rub or come into contact with the steering assembly, or interfere with the steering of the truck. Freeman advised International's district service manager the tierod removed from Unit 465 after the wreck showed evidence of friction and wear marks, was dented, and the anchor eye on the left shock absorber was broken off; when the truck wheels were turned in negotiating the curve the tierod could have been thrown into the shock absorber bracket, causing the accident.

International's district service manager, previously experienced in mechanics, handled all warranty adjustments with dealers in the Oklahoma City district. International pays the dealer for correction of defects or failures coming under the warranty. Freeman had reported the tierod friction and wearing which had been noted in his report; examination of one unit disclosed approximately "$5/32$ of an inch or less" clearance between the tierod and shock absorber anchor, this test being made in March prior to this accident, but the inspection was visual without turning the wheels to ascertain whether there was clearance when the tierod moved; possibly there was some discussion within International organization relative to necessity for

rearranging spring leaves to provide clearance between shock absorbers and spring leaves. When Freeman was employed to do modification installation no instructions were given to check the tierod clearance; the new tierod was suggested by International and Rockwell, but the only instructions given Freeman was to install the tierod, a normal procedure; the responsibility for the modification belonged to International who paid Freeman. This witness also testified modification by drilling the hole, to change position of the shock absorber bracket, was carried out by acceptance and payment to Freeman under warranty for the work. Witness also had recognized possibility that the spring leaves would have to be rearranged in order to provide clearance between the tierod and shock absorber.

An experienced truck driver (Kittley) employed by Consumers had driven the same type tractor as Unit 465. Within his knowledge the second modification, of drilling a hole one inch forward in order to move the shock absorber bracket, had been made on his tractor before plaintiff's accident; although the tierod had been changed the shock absorber had not been moved on plaintiff's tractor. This witness also had made a test in the same type tractor pulling plaintiff's empty trailer to determine at what speed the curve where plaintiff's accident occurred could be negotiated safely, and had determined the curve could be driven at 50 miles per hour with the truck staying in proper traffic lane. The witness also testified if the tierod rubbed against the shock absorber it was highly possible for the steering gear to lock while the truck was in a turn; the wearing can continue for some time " * * * until it gets to a point that it could grab."

An experienced truck mechanic employed by Freeman testified that he made modifications on 8–9 of these tractors. The original tierod had an offset which allowed the tierod to clear the left shock absorber anchor, but the redesigned tubular tierod

did not have any offset; the shop foreman gave no instructions other than to remove the old tierods and put the modified tierod on. The other change involved boring a new hole to remount the shock absorber bracket; this involved loosening the spring from the axle, removing the bolt, and replacing with a longer tie bolt in order to draw the spring back together when the bracket was moved forward. No drawings or specifications were furnished for modification, and when the question arose concerning how far the bracket should be moved the shop foreman handled the matter. Relocation of the hole in the bracket was necessary because the tierod anchor was found to be rubbing against the left shock absorber anchor.

■ The demurrers to the evidence were interposed and sustained separately and will be so considered here. The rule prescribing the method by which trial courts must test the sufficiency of the evidence as against a demurrer is so settled as not to require either reiteration of principles or citation of authority.

■ The trial court sustained Freeman's demurrer upon the theory that in doing the modification work defendant was under no duty to inspect and ascertain whether the modification might cause steering interference, since this would constitute a duty to redesign the installation when no such duty on defendant's part could exist. In effect, this simply was a determination that defendant's duty was limited solely to International, without regard to any duty toward plaintiff, or Consumers as his employer. The modification and repairs were made for the purpose of making the truck safe and usable by plaintiff and his employer. To accomplish this Freeman not only owed the duty to perform the modification properly, but also incurred the duty to inspect and test the vehicle in order to determine whether the truck could be operated without danger to plaintiff and the public.

In Lawson v. Lee Eller Ford, Inc., Okl., 375 P.2d 913, the issue decided was that

a car dealer, who delivered a used car to a prospective purchaser to test drive, owed a prior duty to both the purchaser and the public to " * * * use reasonable or ordinary care in making inspections and tests for the purpose of detecting defects which would make the operation of such car a danger to the driving public." Also see Hembree v. Southard, Okl., 339 P.2d 771.

■ The further inquiry is whether Freeman, while making the required modification under International's warranty, falls within the category invoved in Lawson, supra. The extent of the duty of a repairman, fabricator, or modifier are generally understood to be the same as those of a dealer, used car dealer, or manufacturer. Am.Law Inst., Restatement of the Law of Torts § 404, states the rule:

"One who as an independent contractor negligently makes, rebuilds, or repairs a chattel for another is subject to the same liability as that imposed upon negligent manufacturers of chattels."

In Central & Southern Truck Lines, Inc. v. Westfall GMC Truck, Inc. (Mo.App.), 317 S.W.2d 841, it appeared one Laster owned a truck-tractor used in pulling trailers for the plaintiff truck line. Laster took the tractor to defendant for repairs. After the repairs were made Laster hitched the tractor to a trailer owned by the plaintiff. The tractor went out of control and overturned damaging the trailer. Plaintiff sued the defendant for damages to the trailer contending that it was negligent in making the repairs and, in fastening the tierod of the steering assembly, causing the tractor to go out of control. In affirming a judgment for plaintiff that court said:

"Thus, we have presented for the first time in this State the question of whether or not the doctrine announced by Justice Cardozo in the historical case of MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696, is to be extended to include not merely those who manufacture automobiles but also those who contract to repair them. In the MacPherson case

the manufacturer of the automobile was held liable to a third person, the owner of the car who had purchased it from an independent dealer and who admittedly was not in privity of contract with the manufacturer, for his injury resulting from the collapse of a negligently constructed wheel of the automobile. Recovery was premised in tort on a duty found to be owed by the manufacturer to third parties to use due care not to injure them by a negligently constructed car that would be likely to injure others when put to its intended use. * * *

"The MacPherson decision became the generally accepted rule in this country, * * *

"Thereafter, in jurisdictions other than Missouri, the question was presented as to whether or not the doctrine of liability in tort as announced in the MacPherson decision should be considered as covering injuries to third parties resulting from the negligence of the repairer of an automobile. Almost without exception those decisions extended the MacPherson case doctrine of tort liability to the automobile repairer. * * *

\* \* \* \* \* \*

" * * * It is our opinion that plaintiff made a submissible jury case under tort law principles, and that privity of contract between plaintiff and defendant is not a requisite to recovery."

Moody v. Martin Motor Co., 76 Ga.App. 456, 46 S.E.2d 197, involved a claim for damages allegedly caused by the negligence of a garage in repairing the brakes and steering assembly on a truck. After quoting of Restatement of the Law of Torts, supra, the court said:

"As is seen from the foregoing the same liability which applies to a manufacturer applies to an independent contractor who repairs an article or machine. * * * an independent contractor owes an original duty, before any contract is made, not to endanger the lives and limbs of others by the negligent performance of a contract, when

the consequences of such conduct may be foreseen. * * * "

In Zierer v. Daniels, 40 N.J.Super. 130, 122 A.2d 377, the court held an action was maintainable against a repairman for negligence in repairing the brakes on an automobile. The opinion states:

" * * * Under the prevailing rule today in other jurisdictions, in a case of misfeasance, he who repairs a chattel is bound to exercise reasonable care not to cause bodily harm or damage to one whose person or property may reasonably be expected to be endangered by the probable use of the chattel after the making of the repair. In such a case the obligation in tort is fastened to the repairman's acts quite aside from any obligation in contract. Under this rule, one who negligently repairs an automobile at the request of the owner has been held liable to a third person. * * * "

We have approved the doctrine established in MacPherson, supra, in cases involving liability of the manufacturer of defective products. Bower v. Corbell, Okl., 408 P.2d 307; Crane Company v. Sears, 168 Okl. 603, 35 P.2d 916. The principles of law declared therein are applicable to cases involving negligence in repairing, modifying or altering a product.

The evidence submitted by plaintiff establishes at least a prima facie case for submission to the jury as to Freeman Equipment Company. In Corbell, supra, syllabus 2 held:

"The essential elements of a cause of action based on negligence may be inferred from all the facts and circumstances, and where the circumstances are such as to remove the case from the realm of conjecture and place it within the sphere of legitimate and rational inferences from established facts, a prima facie case is made."

The trial court erred in sustaining the demurrer to the evidence of defendant, Freeman Equipment Company, Inc.

We now consider the trial court's order sustaining defendant Rockwell's demurrer

to the evidence. In considering the demurrer of Freeman we have held the evidence sufficient to require submission of the case to the jury, on the theory that rubbing of the tierod on the shock absorber resulted in interference with the steering of the truck and caused it to go out of control.

Rockwell manufactured and furnished International with a Timken F.E. 970 front axle assembly, which included a tierod 1.63 inches in diameter. Immediately upon being put in use the defective nature of the component was noted and the difficulty first was reported to International, who then reported the matter to Rockwell.

Rockwell designed and manufactured modified tierods and shipped the replacements to Freeman for use in modifying Consumers' trucks, including Unit 465. Rockwell shipped the replacements without examination or inspection for the purpose of determining what effect installation of the modified rod would have on the functioning of other components of the front axle assembly, including the steering mechanism and shock absorber.

Installation of the larger tierod caused additional complications in operation of the trucks. Investigation developed that when the wheels of the trucks were turned the tierod moved forward two inches, made contact with, and rubbed the shock absorber. There was sufficient evidence to require the jury's determination whether manufacture and installation of the replacement was defective and dangerous when put to the use for which intended.

■ Syllabus 1 of Corbell, supra, states:

"Where a vendor supplies a purchaser with a device or instrumentality, and in exercise of ordinary care knows, or should know, if same is defective it will be dangerous to all who come in contact therewith during use for the purpose for which intended, the vendor owes a duty to ascertain the condition of the instrumentality by exercising reasonable care to see that it is safe for the use for which intended. A vendor who fails to exercise ordinary care to ascertain the true condition and safety of the instrumentality and chooses to sell without notice or warning of the dangerous characteristics and dangers inherent in use thereof is liable for injuries proximately caused by use of the instrumentality."

■ The manufacturer may be held liable for breach of implied warranty. Proof of negligence is not required to establish liability for breach of warranty. Marathon Battery Company v. Kilpatrick, Okl., 418 P.2d 900, and authorities cited.

In Crane Company v. Sears, supra, syllabus 2 states:

"Where a manufacturer with information before him of the nature of the use to which an article manufactured by him is to be put and from the nature of such use must know that if the article when put to such use, if defective, will be imminently dangerous to persons who he knows must come in contact therewith, a duty rests upon such manufacturer to use ordinary care to ascertain the condition of the article to see that it is safe. If he fails to exercise ordinary care in this regard, and as a result sells the article in a defective condition, he is liable for personal injuries to that class of persons who must necessarily come in contact with such article, and liability is not limited to those with whom the manufacturer contracts."

The Oklahoma rule is in accord with the numerous decisions from other jurisdictions. MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, 1051, L.R.A. 1916F 696; Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897; Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1.

The facts in Dawson v. McWilliams (C. C.A.5) 146 F.2d 38, are quite similar to those presented here. Reis and Union Construction Company were engaged as co-contractors in construction of a railroad

causeway across the Washita River in Oklahoma. Deceased was employed by the contractors in the pile driving crew. The pile driver was operated by a crane supported by two cables, which had been furnished and installed by appellants, Dawson et al. Deceased was killed when the crane collapsed, as the result of defective installation of the cables. The widow settled her claim for wrongful death of deceased against the contractors, and filed a separate suit against Dawson et al. for negligence and breach of warranty based upon failure to properly furnish and install the cables. The circuit court, citing Crane Company v. Sears, supra, held the action against Dawson, manufacturer and installer of the cables, was properly brought. That court adopted the above quoted rule in Sears practically verbatim in determining the nature and extent of a manufacturer's liability.

 The position of Dawson in the case cited and Rockwell in the present case are practically identical. Dawson furnished and installed defective cables. Here Rockwell furnished a defective front axle assembly, including a tierod which did not function properly. In each instance the manufactured article furnished was a component part of the assembled machine. The trial court erred in sustaining a demurrer to the evidence of the defendant Rockwell-Standard Corporation.

Substantial arguments are advanced supporting other contentions presented as grounds for reversal. Because the case must be tried again, we purposely avoid discussion of these contentions and the arguments offered.

This cause is reversed with directions to the trial court to overrule demurrers to the evidence of defendants Freeman Equipment Company, Inc. and Rockwell-Standard Corporation and proceed further in accordance with this opinion.

JACKSON, C. J., IRWIN, V. C. J., and WILLIAMS, BLACKBIRD and LAVENDER, JJ., concur.