JOHN J. SLATE, SR. *vs.* BETHLEHEM STEEL CORPORATION
(and a companion case[1]).

Essex. March 4, 1987. — July 6, 1987.

Present: HENNESSEY, C.J., NOLAN, LYNCH, & O'CONNOR, JJ.

*Negligence,* Manufacturer, Duty to warn. *Practice, Civil,* Instructions to jury.

At the trial of actions brought by a plant foreman (plaintiff) and his wife as a result of serious injuries sustained by the plaintiff in the course of his employment by a manufacturer of jet engine components while testing a machine that had been designed for his employer by a highly-qualified engineer, with assistance from the plaintiff, and that had been repaired in the defendant's machine shop at the request of the engineer, the evidence was insufficient to warrant an instruction to the jury that they could find the defendant liable if the defendant failed to warn the plaintiff and his fellow employees of the dangerous character of the machine, inasmuch as the plaintiff and his wife failed to present evidence that the defendant knew of a danger that the plaintiff did not appreciate. [381-384]

CIVIL ACTIONS commenced in the Superior Court Department on June 20, 1979, and July 29, 1981, respectively.

The cases were tried before *John P. Forte,* J., sitting under statutory authority.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Neal C. Tully (Edward I. Masterman* with him) for Bethlehem Steel Corporation.

*Earle C. Cooley (Patrick T. Jones & Thomas G. Guiney* with him) for the plaintiffs.

*James P. Keane,* for the Aero Manufacturing Corp., submitted a brief.

HENNESSEY, C.J. The plaintiff, John J. Slate, Sr., was injured during the course of his employment at Aero Manufac-

---

[1] Catherine M. Slate *vs.* Aero Manufacturing Corp. & another.

turing Corp. (Aero) on October 26, 1978, when an isostatic press that had been repaired by Bethlehem Steel Corporation (Bethlehem) malfunctioned. On June 20, 1979, Slate filed a complaint against Bethlehem, and on July 29, 1981, Slate's wife, Catherine, filed a complaint against both Bethlehem and Aero seeking damages for loss of consortium. The complaints alleged negligence on the part of Bethlehem in the performance of "modifications, repairs, alterations and other procedures" on the press. The cases were consolidated for trial. In addition to instructing the jury on Bethlehem's liability in negligently repairing the press, the judge instructed the jury that liability could be found against Bethlehem if Bethlehem failed adequately to warn Slate of the danger of using the press. After trial, the jury returned verdicts in favor of Slate against Bethlehem in the amount of $1,096,950 and in favor of Catherine against Bethlehem and Aero in the amount of $214,500. Both Bethlehem and Aero moved for judgment notwithstanding the verdict or in the alternative for a new trial. These motions were denied. The Appeals Court affirmed the judgment with respect to Aero and reversed the judgments with respect to Bethlehem on the ground that there was insufficient evidence on which the jury could have found that Bethlehem had been negligent for failing to warn about the dangerous character of the press. *Slate* v. *Bethlehem Steel Corp.,* 22 Mass. App. Ct. 641 (1986). Because the jury did not specify the theory on which liability had been based, the Appeals Court ordered the cases remanded for a new trial. The Slates and Aero applied for further appellate review. We denied the application of Aero and granted the application of the Slates. Although we conclude that the judge erred in instructing the jury on the issue of duty to warn, our decision in this case does not affect the plaintiffs' allegations in their complaints that Bethlehem was negligent in the performance of "modifications, repairs, alterations and other procedures" on the press. Bethlehem does not argue that those aspects should not have been submitted to the jury. Accordingly, the single issue before this court is whether the evidence warranted an instruction to the jury as to Bethlehem's duty to warn. Questions of Bethlehem's negligence in its performance must be resolved at a new trial.

We summarize the facts relevant to this appeal. In late 1977, E.C. Alexander, a "sales representative" for Aero, secured on behalf of Aero a contract to fabricate a metal part for aircraft engines. Alexander was an expert in metallurgy and in the design and production of metal parts and machinery to shape metal. To produce the part specified in the contract, Alexander designed an isostatic press to operate at pressures up to 65,000 pounds per square inch. The principal components of the press, the cylinder and rod, were manufactured to Alexander's specifications and together with the seals, pump, base, and associated machinery were assembled by Aero personnel at Aero's facility under Alexander's supervision. Slate, who was the general foreman of the machine area, the welding area, and the sheet metal shop at Aero, was instructed by his immediate supervisor and by the president of Aero, Michael Fonzo, to assist Alexander on this project. Alexander explained to Slate how the press operated and its intended purpose. Fonzo testified that, other than Alexander, Slate was the most knowledgeable person at Aero concerning the press and how it operated.

During an initial test of the press conducted by Alexander and Slate, a seal at one end of the rod extruded into the space between the rod and the cylinder, causing the rod to jam. The rod and the cylinder were then sent to Bethlehem's East Boston shipyard to be pressed apart. While the rod and the cylinder were at Bethlehem's machine shop, Alexander spoke with Raymond Johnson, the shop foreman, about doing additional work. He asked Johnson to drill a hole into the rod leaving six inches of steel between the hole and the pressure chamber that had previously been cut into the rod. When Alexander returned to Bethlehem's machine shop, he discovered that the hole had been improperly drilled into the pressure chamber. Alexander discussed the problem with Johnson and requested that Bethlehem's machine shop drill a circle of twelve bolt holes in the end of the rod in order to attach a cap to the rod and cover the hole. The rod and the cylinder were then returned to Aero.

At Aero, a cap was fabricated and Aero personnel bolted it over the hole. Alexander and Slate then conducted a second

test of the press. Slate was aware that Bethlehem had improperly drilled the hole and understood Alexander's proposed solution. When the pressure within the press reached 65,000 pounds per square inch during the test, Slate noticed that a drip had developed at the seam where the cap covered the hole. As he shouted to Alexander, a stream of water shot out of the seam slicing Slate's face, arm, and hand. Subsequent inspection of the press revealed that the leak had been caused by the failure of the seal between the cap and the rod.

The judge instructed the jury that they could find the defendants liable if the defendants failed to warn of the dangerous character of the press.[2] Although Bethlehem did not contend that the charge misstated the law governing a duty to warn, it did argue that there was no evidence to warrant such an instruction. We have stated that " 'a manufacturer of a product, which the manufacturer knows or should know is dangerous by nature or is in a dangerous condition,' is under a duty to give warning of those dangers to 'persons who it is foreseeable will come in contact with, and consequently be endangered by, that product.' " *MacDonald* v. *Ortho Pharmaceutical Corp.*, 394 Mass. 131, 135, cert. denied, 474 U.S. 920 (1985), quoting *H.P. Hood & Sons* v. *Ford Motor Co.*, 370 Mass. 69, 75 (1976).

---

[2] The judge charged as follows: "If one of the defendants knew or should have known that this gadget was dangerous, would the average prudent person of similar circumstances have warned the user? Was a warning required? Would a reasonably prudent person have given a warning?

"If you find a warning was required, or should have been given, then determine what would have been an adequate warning.

"An adequate warning is one calculated to bring home to the reasonably prudent user the nature and extent of the danger of the item involved.

"The forcefulness of the warning must be commensurate with the danger involved.

"However, a warning is only necessary for a hidden danger, not one that is obvious, nor must a warning be given to someone who already knows the product's hazardous propensities.

"An adequate warning is, by definition, one what would in the ordinary course come to the user's attention.

"And again, I say the duty to warn extends to 'concealed' and not 'obvious' danger.

"Now, one who repairs a product for another is liable for his negligence to the ultimate user, to the same extent as if he had manufactured the item."

See *Mitchell* v. *Sky Climber, Inc.,* 396 Mass. 629, 631-632 (1986). Similarly, § 388 of the Restatement (Second) of Torts (1965) imposes a duty to warn on a supplier of chattels when the supplier (1) "knows or has reason to know that the chattel is or is likely to be dangerous for the use of which it is supplied" and (2) "has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition."[3] See *Schaeffer* v. *General Motors Corp.,* 372 Mass. 171, 174 (1977); *Uloth* v. *City Tank Corp.,* 376 Mass. 874, 880 (1978); *Fiorentino* v. *A.E. Staley Mfg. Co.,* 11 Mass. App. Ct. 428, 433 (1981), quoting *Lakatosh* v. *Diamond Alkali Co.,* 208 N.W.2d 910, 913 (Iowa 1973) ("A duty to warn depends on [the manufacturer's] superior knowledge and is said to exist when one may reasonably foresee danger of injury or damage to one less knowledgeable unless adequate warning of danger is given"); *Wolfe* v. *Ford Motor Co.,* 6 Mass. App. Ct. 346, 349-350 (1978), *S.C.,* 386 Mass. 95 (1982). See also W. Prosser & W. Keeton, Torts § 96, at 686 (5th ed. 1984) ("It is clear that there should be no liability for failing to warn someone of a risk or hazard which he appreciated to the same extent as a warning would have provided"). We need not examine the question whether Bethlehem knew or should have known that the isostatic press was dangerous when it left the shop because, as the Appeals Court correctly pointed out, the plaintiffs failed to present evidence that Bethlehem knew of a danger that Slate did not appreciate.

Nevertheless, the plaintiffs argue that sufficient evidence was introduced at trial to warrant the duty to warn instruction and that the Appeals Court's conclusion otherwise was an improper judicial intrusion into the jury's decision making. Viewing the evidence in the light most favorable to the plaintiffs, *Uloth* v. *City Tank Corp., supra* at 876, we must determine whether "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found

[3] The term "supplier" includes "one who undertakes the repair of a chattel and who delivers it back with knowledge that it is defective because of the work which he is employed to do upon it." Restatement (Second) of Torts § 388 comment c (1965). See *id.* at §§ 403, 404.

from which a reasonable inference could be drawn in favor of the plaintiff." *MacDonald* v. *Ortho Pharmaceutical Corp.*, *supra* at 140-141, and cases cited. The plaintiffs contend that, from the dimensions and configuration of the cylinder and the rod brought to Bethlehem's machine shop, Johnson, the shop foreman at Bethlehem, was aware that he was to repair a "pressure vessel," that the pressure medium was water, and that the pressure vessel would require high pressure seals. Furthermore, Johnson knew that the hole had been improperly drilled into the pressure chamber and that this would have to be repaired. He discussed with Alexander alternative ways to seal the hole and decided that capping the end of the rod was preferable. Johnson initiated the repair by drilling the circle of bolt holes into the end of the rod. Although the plaintiffs make an argument that Johnson understood the operation of the isostatic press and the necessity that it be properly repaired, this evidence does not indicate that Johnson knew or should have known of a danger of which Slate was ignorant. Aero designed and assembled the machine, and Slate was a knowledgeable participant in those proceedings; Bethlehem only repaired the machine, and the employees of Bethlehem had no precise information as to what was to be done after the machine was returned to Aero. Employees of Bethlehem could rightfully rely, to some extent, on their knowledge that further procedures at Aero were to be supervised by Alexander, the trained engineer. See Restatement (Second) of Torts § 388 comment n (1965). Slate testified that he understood how the isostatic press operated and the pressures involved, that he knew of the breach of the pressure chamber and the proposed repair, and that he was relying on Alexander's skill and judgment in designing the cap and seals. In these circumstances, no duty to warn on the part of Bethlehem arose.[4]

---

[4] In the past, we have been concerned that a manufacturer of a dangerous product not escape liability by warning of the danger which could be prevented by a slight change in design especially when "a user may not have a real alternative to using a dangerous product, as where a worker must either work on a dangerous machine or leave his job." *Uloth* v. *City Tank Corp.*, *supra* at 880. Here, however, no warnings were given, and thus,

Despite a conclusion that there was insufficient evidence to charge the jury that liability could be premised on a theory of failure to warn, the plaintiffs contend that the judgment against Bethlehem should be affirmed because neither the plaintiffs' complaints nor their case-in-chief raised the issue of duty to warn. They contend that it was not until a witness for the plaintiffs testified during cross-examination by counsel for Aero, over no objection from Bethlehem, that the issue of duty to warn was injected in the trial. While it is true that the complaints in these cases allege only negligence by Bethlehem in the "modifications, repairs, alterations and other procedures" of the isostatic press, the plaintiffs requested jury instructions concerning a duty to warn and, over Bethlehem's objections, a duty to warn instruction was given by the judge. Based on our discussion above, there was insufficient evidence to warrant such an instruction, and it should have been omitted. *Back* v. *Wickes Corp.*, 375 Mass. 633, 638 (1978). Furthermore, because the jury were instructed that they could find the defendants liable under either a duty to warn or a negligence theory, we do not know whether the verdicts were based on the improper instruction. See *Friese* v. *Boston Consol. Gas Co.*, 324 Mass. 623, 630-631 (1949); *Womble* v. *Dubuque Fire & Marine Ins. Co.*, 310 Mass. 142, 148-149 (1941). Consequently, we reverse the judgments for the plaintiffs against Bethlehem and we remand the cases to the Superior Court for a new trial on the sole issue as to whether Bethlehem is liable to the Slates by reason of negligent performance of "modifications, repairs, alterations and other procedures" on the press.

*So ordered.*

---

Bethlehem is not attempting to avoid liability on the claim of negligent repair to the isostatic press by asserting that it provided an adequate warning of the danger.