Kalika RAMCHARRAN, Plaintiff,

v.

**CARRARO GRAPHIC EQUIPMENT, INC., and Carint, S.R.L., Defendants.**

Civ. A. No. 91–11476–WF.

United States District Court, D. Massachusetts.

June 9, 1993.

Jeffrey N. Roy, William K. Walsh, Ravech, Aronson & Shuman, PC, Boston, MA, for plaintiff.

Brian P. Voke, Campbell & Associates, Boston, MA, Patricia A. Moores, Pino & Associates, White Plains, NY, for defendants.

## MEMORANDUM AND FIRST ORDER ON MOTION TO AMEND COMPLAINT (# 34)

COLLINGS, United States Magistrate Judge.

By his Motion to Amend Complaint (# 34), plaintiff seeks to add claims against an additional defendant, G.M. Service S.r.l. (hereinafter, "G.M."). The claims are based on negligent failure to warn and breach of warranty. The defendant Carint S.r.l. (hereinafter, "Carint") opposes, primarily on the basis that the facts as known by plaintiff are insufficient to state claims against G.M. The parties have consented to a referral of the case to the undersigned for all purposes, including trial and entry of judgment, pursuant to 28 U.S.C. § 636(c).

The facts in the light most favorable to the plaintiff are that the plaintiff was injured at work while operating a printing press manufactured by Carint which was owned by plaintiff's employer. No guards were on the machine at the time of the accident. In addition, at the time of the accident, a pneumatic interlock device had been bypassed. Carint maintains that the machine was delivered and installed with guards and a pneumatic interlock device which, if they had been

on the machine and in operation at the time of the accident, would have prevented it.

It appears that one Walter Mercele of G.M. installed the machine and had returned to the plaintiff's place of employment on at least one subsequent occasion to service the machine. It is alleged that while he was there, Mr. Mercele observed that there were no guards on the machine and that the pneumatic interlock device had been bypassed. It is assumed that in installing the machine, Mr. Mercele was acting as an agent of Carint. It is not known whether he was acting as an agent for Carint at the time he returned to service the machine or whether he had some sort of contract with the plaintiff's employer which obligated him to service the machine. Plaintiff further alleges that during the visit(s) at which the machine was serviced, Mr. Mercele operated the machine without the guards and with the pneumatic interlock device bypassed and never warned plaintiff's employer or any agent of plaintiff's employer of the danger involved in operating the machine without guards and with the pneumatic interlock device bypassed.

■ The issue with respect to the negligence claim is whether or not G.M., as an entity hired by Carint or plaintiff's employer to service the machine, was under a duty to warn plaintiff's employer of the danger of using the machine without guards and with the pneumatic interlock device bypassed. The issue is governed by Massachusetts law.

It is clear that a duty may arise as a result of an obligation assumed by G.M. in a contract either with Carint or plaintiff's employer. *Parent v. Stone & Webster Engineering Corp.*, 408 Mass. 108, 114, 556 N.E.2d 1009, 1013 (1990); *Power Service Supply v. E.W. Wiggins Airways*, 9 Mass.App.Ct. 122, 128, 399 N.E.2d 878, 882 (1980); *Banaghan v. Dewey*, 340 Mass. 73, 80, 162 N.E.2d 807, 812 (1959). The problem with this theory in the instant case is that there is no evidence of a contract or any obligations assumed by G.M. under any contract.

In the case of *Slate v. Bethlehem Steel Corporation*, 400 Mass. 378, 510 N.E.2d 249 (1987), the Supreme Judicial Court notes that the Restatement (Second) of Torts (1965)

imposes a duty to warn upon a supplier of chattels when the supplier:

(1) 'knows or has reason to know that the chattel is or is likely to be dangerous for the use to which it is supplied' and

(2) 'has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition.'

*Slate v. Bethlehem Steel Corporation, supra*, 400 Mass. at 380, 510 N.E.2d at 251.

In a footnote, the Court notes that according to Restatement (Second) of Torts, § 388 comment c (1965),

The term 'supplier' includes 'one who undertakes the repair of a chattel and who delivers it back with knowledge that it is defective because of the work which he is employed to do upon it.'

*Slate v. Bethlehem Steel Corporation, supra*, 400 Mass. at 380, 510 N.E.2d at 251 (footnote 3).

The use of the phrase "because of the work which he is employed to do upon it" indicates that, as stated *supra*, the duty is dependent upon the contractual arrangement. There is no evidence that G.M. was "employed" to do any work on the guards or pneumatic interlock device on the machine. *See Barry v. Stevens Equipment Co.*, 176 Ga.App. 27, 335 S.E.2d 129, 131 (1985).

The Supreme Court of Oklahoma has held that there is a duty upon a person or entity which undertakes repairs to warn of dangers even if he is not contractually obligated to do so. *Stuckey v. Young Exploration Co.*, 586 P.2d 726, 729–30 (Okl.1978). That case involved a driver losing control of a truck because a "drag link" was separated from the "steering arm" which resulted in total loss of steering control causing the accident. *Id.*, 586 P.2d at 729. An entity called City Spring Works had earlier undertaken to repair the truck's steering system. There was evidence that as part of that undertaking, City Spring Works would, as a matter of custom and practice, inspect the "drag link." There was further evidence that the conditions which would lead to the separation would have been obvious upon an inspection of the "drag link" and if found, the "drag link" would have to be repaired or the cus-

tomer warned. *Id.*, 586 P.2d at 730. On this record, the Supreme Court of Oklahoma wrote:

> In *Barnhart v. Freeman Equipment Co.*, 441 P.2d 993 (Okl.1965), we recognized that a repairer of chattels has a duty to exercise reasonable care not to cause bodily harm to one whose person or property might reasonably be expected to be endangered by probable use of the chattel after repair. This duty is quite aside from any obligation in contract. One who negligently repairs a vehicle at the request of the owner is liable to third persons. City [Spring Works] not only owed a duty to perform the repair properly, but also the duty to inspect and test the vehicle in order to determine whether truck [sic] could be operated without danger to plaintiff or the public. *Barnhart v. Freeman Equipment Co.*, *supra*, p. 997.

*Stuckey v. Young Exploration Co.*, *supra*, 586 P.2d at 730.

■ It seems clear that the Supreme Judicial Court of Massachusetts would agree with the proposition that liability of a repairer can be predicated on negligent performance of repairs which were undertaken. Whether that Court would also impose the additional duty on a repairer to inspect and test the machine in order to determine whether it could be operated without danger to others is an open question. I suspect that the answer depends on the scope of the duty imposed by the Oklahoma Supreme Court. For example, is the duty to inspect and repair or warn, as found by the Oklahoma Supreme Court, confined to those parts of the machine which the repairer undertook to repair? The answer to this question is probably "yes" since it could hardly be thought that a repairer who undertakes to repair the steering system would have an additional duty to inspect the gas tank for leaks. In both the *Stuckey* opinion and the case which was cited in *Stuckey*, i.e. *Barnhart v. Freeman Equipment Co.*, 441 P.2d 993 (Okl.1968), the duty was premised upon evidence that it was the usual practice of the repairer in each case to inspect those portions of the machine which the repairer undertook to repair. *Stuckey*, *supra*, 586

P.2d at 730; *Barnhart*, *supra*, 441 P.2d at 996.

The closest case to these Oklahoma cases is the Appeals Court decision in *Rosado v. Boston Gas Company*, 27 Mass.App.Ct. 675, 542 N.E.2d 304 (1989). In that case, a serviceman for Boston Gas Company was called by Ms. Rosado to turn on the gas in her apartment.

> While reading the meter in the basement, [the serviceman] found that the gas was already on but, **as part of the routine of his duties,** he inspected Rosado's appliances to be sure they were operating safely. A space heater, [the serviceman] found, was far from safe. It had not been vented, as required, to a chimney or flue stack and, as it was being operated, emitted products of combustion, such as carbon monoxide, into the kitchen and adjoining spaces in the apartment.

*Rosado v. Boston Gas Company*, *supra*, 27 Mass.App.Ct. at 676, 542 N.E.2d at 305 (emphasis supplied).

The serviceman called the danger to Rosado's attention, told her he turned off the supply of gas to the space heater and told her to have her landlord install proper venting. *Id.* Pursuant to regular procedures of the gas company, the serviceman attached a warning to the heater. *Id.*, 27 Mass.App.Ct. at 677, 542 N.E.2d at 306. The Appeals Court indicated the adequacy of the warning was an issue for the jury, thereby implying that the serviceman had a duty, in all the circumstances, to warn.

■ In the instant case, there is no evidence of what the purpose of G.M.'s visit to plaintiff's employer's place of business was. If it was to make specific repairs, any duty apart from a duty imposed by contract would have to be based on either negligence in making the repairs or the failure to repair or warn of dangers which it would have discovered as a routine matter in making the specific repairs it undertook to make. Even beyond that, there would be no duty to warn of obvious dangers of which the plaintiff and his employer would have been aware. *Maldonado v. Thomson National Press Co.*, 16 Mass.App.Ct. 911, 912, 449 N.E.2d 1229, 1230–31 (1983). Whether the failure to have

the guards in place or the bypassing of the pneumatic interlock device is such an obvious danger that even if Mr. Mercele had observed these conditions, he would not be under a duty to warn of them is not able to be determined on the basis of the record before me.

■ In sum, the plaintiff's best-case scenario on existing law is the Oklahoma rule. However, that rule is based on the scope of the repairer's undertaking and the repairer's usual practice in making the repairs which are undertaken. On the present record, there is no evidence of what G.M.'s undertaking was and whether an inspection of the guards and/or pneumatic interlock device was routinely made as part of that undertaking. Although the plaintiff avers that he has taken the deposition of Mr. Mercele upon written questions,[1] it appears from the excerpt which has been provided to the Court[2] that the deposition did not provide the factual information needed, either because the questions were too general or the answers too cryptic.[3] On this record, I suspect that a further deposition to obtain more specific information would have to be part of a "reasonable inquiry" which is required to be made before claims are made against a party. Rule 11, Fed.R.Civ.P.

Accordingly, I shall order that the motion to amend the complaint to add a negligence claim against G.M. be denied without prejudice. Plaintiff may file such a motion after conducting a "reasonable inquiry" and satisfying himself that the negligence claim sought to be asserted against G.M. is "well-grounded in fact" consistent with the foregoing analysis. Rule 11, Fed.R.Civ.P.

■ Plaintiff's basis for seeking to add a claim of breach of warranty against G.M. is that "... as the product's designer and installer, G.M. is subject to warranty liability." *See* # 40, p. 3. The problem with this analysis is that under Massachusetts law, if a designer is not the seller of the goods, warranty liability does not apply. *Klein v. Catalano,* 386 Mass. 701, 710, 437 N.E.2d 514, 521 (1982). In order for the warranty under Article 2, § 314 of the Uniform Commercial Code to apply, there must have been a transaction involving a sale of goods. If the heart of a contract or transaction is the rendition of services, the UCC does not apply. In the instant case, there is no evidence that there was any contract at all, let alone a contract for the sale of goods, between plaintiff's employer and G.M. *See generally Omni–Wave Electronics Corp. v. Marshall Industries,* 127 F.R.D. 644, 651 (D.Mass.1989).

■ It is to be recalled that Section 402A of the Restatement (Second) of Torts has not been adopted in Massachusetts and, consequently, there is no recovery on the basis of strict liability in tort under Massachusetts law. *Swartz v. General Motors Corp.,* 375 Mass. 628, 629–31, 378 N.E.2d 61, 63–64 (1978). Thus, plaintiff's citation to the case of *Barth v. B.F. Goodrich Tire Co.,* 265 Cal. App.2d 228, 71 Cal.Rptr. 306 (1968) is misplaced, since in that case, the Court found the installer strictly liable in tort and applied the definition of sale contained in section 402A of the Restatement (Second) of Torts. *Id.,* 71 Cal.Rptr. at 321. This definition is quite a bit broader than what comprises a sale of goods under the UCC. The Illinois cases cited by plaintiff, i.e., *Brannon v. Southern Illinois Hospitals Corp.,* 69 Ill. App.3d 1, 25 Ill.Dec. 462, 386 N.E.2d 1126 (1978) and *Court v. Grzelinski,* 72 Ill.2d 141, 19 Ill.Dec. 617, 379 N.E.2d 281 (1978), are likewise inapposite. In the *Brannon* case,

---

1. The deposition was never filed as is required by Rule 31(b), (c), Fed.R.Civ.P. A Court does not have the ability under Rule 5(d), Fed.R.Civ.P., to dispense with this requirement.

2. *See* # 34, Exhibit D.

3. The only relevant testimony is as follows:

   90. Q. What is the relationship between Carint S.R.L. and Graphic Machine Service?

   A. G.M. Service is a company appointed by Carint S.r.l. for the design, service and supply of spare parts for its printing presses.

   91. Q. Who retained Graphic Machine Service relative to the subject printing press?

   A. Carint S.r.l.

   92. Q. What services were performed by Graphic Machine Service with regard to the subject Printing Press?

   A. See answer to no. 90.

the Court, relying on the *Court*[4] case, upheld claims brought under a theory based on strict liability in tort, a theory recognized under Illinois law. Since the doctrine has not been adopted in Massachusetts, the only theory upon which liability in the instant case can be predicated other than negligence is under the warranty provisions of Article 2 of the UCC. Plaintiff has cited no case in which a warranty claim under the UCC has been upheld in the situation in which the party sought to be held liable was not a seller of goods.

Accordingly, plaintiff's motion to amend to add a breach of warranty claim against G.M. will be denied without prejudice to assert such a claim if and when evidence is discovered which would support the proposition that G.M. was a seller of the machine in question.

For the foregoing reasons, it is ORDERED that plaintiff's Motion to Amend Complaint (#34) be, and the same hereby is, DENIED without prejudice to filing such a motion after Mr. Mercele is deposed further and then only if the claims sought to be asserted are "well-grounded in fact" and "warranted by existing law or a good faith argument for the extension, modification or reversal of existing law"[5] in accordance with the within memorandum.

---

4. In the case of *Court v. Grzelinski, supra,* 72 Ill.2d 141, 19 Ill.Dec. 617, 379 N.E.2d 281, there was a "sale" within the definition of Article 2 of the UCC but the case was pleaded under a strict liability theory rather than a warranty theory, and the Court upheld the claim based on the strict liability theory.

5. *See* Rule 11, Fed.R.Civ.P.