Ismar **HOCHEN** as Administrator of the Estate of Ismael Hochen, Richard Dufault, Christine Dufault, individually, Christine Dufault, as Mother and Next Friend of Richard Dufault, Jr. and Leah Dufault, Plaintiffs,

v.

**BOBST GROUP, INC., Defendant.**

**Civ.A. No. 96–11214–RBC.**

United States District Court, D. Massachusetts.

May 17, 2000.

---

Paul Nyer, Paul Nyer & Associates, Framingham, MA, for Richard Dufault, Christine Dufault, Next Friend of Richard Dufault, Jr. and Leah Dufault. .

John A. Donovan, Jr., Kevin G. Kenneally, Burns & Levinson, Boston, MA, for Bobst Group, Inc.

Daniel P. Gibson, Elisabet C. Hayes, Gibson & Behman, Burlington, MA, for Winterthur International.

## MEMORANDUM AND ORDER ON DEFENDANT BOBST GROUP, INC.'S EIGHTH PRETRIAL MOTION (DOCUMENTS AND TESTIMONY RE: POST ACCIDENT EVENTS) (# 205)

COLLINGS, Chief United States Magistrate Judge.

Subsequent to the explosion of press eight at the Avery Dennison (hereinafter "Avery") facility on August 2, 1994, Avery requested that a representative of Bobst Group, Inc. (hereinafter "Bobst") be present for the "cause and origin" investigation to be conducted by Avery, its insurance carrier, OSHA, the Fire Marshal's Office, and others. Moreover, on different occasions after August 2, 1994, Avery contracted with Bobst to perform certain service work on press eight. Pursuant to Fed.R.Evid. 407 defendant Bobst seeks to preclude the plaintiffs

> from introducing evidence at trial or mentioning in opening statement or argument any post-accident activities at Dennison by Defendant Bobst Group, Inc. ... [and] deposition testimony designated by plaintiffs concerning the post-incident inspection activities or work requested of Bobst.

Defendant Bobst Group, Inc.'s Eighth Pretrial Motion # 205 at 1.

1. Mr. Cartier was a Bobst representatives at the

The plaintiffs have filed an opposition (# 235) to the motion in limine and, with the benefit of oral argument as well as an opportunity to review the parties' legal arguments, this pretrial motion is in a posture for resolution.

In its entirety, the evidentiary rule provides:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Fed.R.Evid. 407.

The defendant argues that the appropriate application of this rule dictates that the introduction into evidence of the report generated by Mr. Cartier [1], as well as any testimony with respect to it, be precluded. In support of its position, Bobst primarily relies upon a Massachusetts case wherein the Supreme Judicial Court expounded on the law of the Commonwealth:

> Evidence of postaccident safety improvements is not admissible to prove negligence. *doCanto v. Ametek, Inc.*, 367 Mass. 776, 779, 328 N.E.2d 873 (1975). *See, e.g., Manchester v. Attleboro*, 288 Mass. 492, 193 N.E. 4 (1934); *Albright v. Sherer*, 223 Mass. 39, 42, 111 N.E. 711 (1915); *Shinners v. Proprietors of Locks & Canals on Merrimack River*, 154 Mass. 168, 28 N.E. 10 (1891). The predominant reason for this exclusionary rule derives from public policy unrelated to the fact-finding process, that "a contrary rule would discourage owners from making repairs to dangerous property." *doCanto, supra*. Cf. Advisory Committee Notes to Fed.R.Evid. 407 (1987). Our cases to date have involved evidence of actions more on the order of traditional "repairs," *see, e.g., doCanto, su*-

"cause and origin" investigation.

pra (design improvements to commercial laundry ironer); *Nelson v. Economy Grocery Stores Corp.*, 305 Mass. 383, 389, 25 N.E.2d 986 (1940) (sweeping sidewalk); *National Laundry Co. v. Newton*, 300 Mass. 126, 127, 14 N.E.2d 108 (1938) (sanding street); *Manchester*, supra (barricading and illuminating trench); *Goodell v. Sviokcla*, 262 Mass. 317, 319, 159 N.E. 728 (1928) (nailing down board); *Beckles' Case*, 230 Mass. 272, 274, 119 N.E. 653 (1918) (repairs to elevator); *Albright*, supra (repairs to wagon); *Menard v. Boston & Me. R.R.*, 150 Mass. 386, 388, 23 N.E. 214 (1890) (stationing flagman at railroad crossing). However, we think that good public policy also requires the exclusion of the results of the defendant's investigation into the causes of an accident involving its bus. Although not itself a "repair" of a dangerous condition, the investigation is the prerequisite to any remedial safety measure. Without discovering the cause of the accident, the defendant can scarcely hope to prevent its recurrence. The investigation is inextricably bound up with the subsequent remedial measures to which it may lead, and questions of admissibility of evidence as to each should be analyzed in conjunction and answered consistently. If, as a result of the investigation, the defendant had discharged the bus driver, or required him to undergo additional safety training, evidence of these steps would fall squarely within the rule excluding evidence of subsequent remedial measures. The investigation cannot sensibly be treated differently. To do so would discourage potential defendants from conducting such investigations, and so preclude safety improvements, and frustrate the salutary public policy underlying the rule. *Accord*, construing Fed.R.Evid. 407, *Maddox v. Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986); *Segura v. Reno*, 116 F.R.D. 42, 44 (D.Nev.1987); *Alimenta (U.S.A.), Inc. v. Stauffer*, 598 F.Supp. 934, 940 (N.D.Ga. 1984). *But see Rocky Mountain Helicopters, Inc. v. Bell Helicopters Textron, A Div. of Textron, Inc.*, 805 F.2d 907, 918–

919 (10th Cir.1986); *Wilson v. Beebe*, 770 F.2d 578, 590 (6th Cir.1985); *Westmoreland v. CBS, Inc.*, 601 F.Supp. 66, 67–68 (S.D.N.Y.1984).

*Martel v. Massachusetts Bay Transportation Authority*, 403 Mass. 1, 4–5, 525 N.E.2d 662, 664 (1988).[2]

The difficulty with the defendant's position is that the law of the First Circuit differs from the law of Massachusetts and it is the federal, not the state, law which controls. *See Cameron v. Otto Bock Orthopedic Industry, Inc.*, 1994 WL 51630 at *2–3 (D.Mass.1994) ("Since the *McInnis* [*v. A.M.F., Inc.*, 765 F.2d 240 (1st Cir.1985) ] decision, the First Circuit has continued to apply Rule 407 in diversity cases without any mention of the conflict of law.")

The First Circuit has explained that:

Like the majority of circuits, this court has held that Rule 407 applies to strict product liability actions. *Raymond v. Raymond Corp.*, 938 F.2d 1518, 1522 (1st Cir.1991). Assuming, arguendo, that Rule 407 would likewise apply to an express warranty action, we agree with the district court that the redacted documents admitted were not remedial measures of the sort excluded by the rule. The Rule prohibits "evidence of ... subsequent measures," not evidence of a party's analysis of its product. See *Rocky Mountain Helicopters v. Bell Helicopters*, 805 F.2d 907, 918 (10th Cir.1986) (upholding admission of post-accident tests of allegedly defective product because "[i]t would strain the spirit of the remedial measure prohibition in Rule 407 to extend its shield to evidence contained in post-event tests or reports"). The fact that the analysis may often result in remedial measures being taken (as occurred here) does not mean that evidence of the analysis may not be admitted. *See Benitez–Allende v. Alcan Aluminio do Brasil, S.A.*, 857 F.2d 26, 33 (1st Cir.1988) (upholding admission of test of allegedly defective product even though test was used to plan voluntary recall of product

---

**2.** The defendant also cites several of the cases upon which the Massachusetts court relied as authority for its reasoning.

following accident), *cert. denied,* 489 U.S. 1018, 109 S.Ct. 1135, 103 L.Ed.2d 196. *Prentiss & Carlisle Company, Inc. v. Koehring–Waterous Division Of Timberjack, Inc.,* 972 F.2d 6, 10 (1st Cir.1992).

Under the rationale of the *Prentiss & Carlisle* case, Mr. Cartier's report as well as testimony regarding it are admissible. So, too, would be any findings made by the Bobst technicians who worked on press eight post-explosion. What would not be admissible under Rule 407 would be any subsequent remedial repairs made by those technicians.

In opposition to the defendant's motion, the plaintiffs attempt to shoehorn the remaining evidence at issue, i.e., exhibits and testimony respecting post-accident service work done by Bobst, into one of the exceptions to Rule 407. These efforts are unsuccessful. The plaintiffs' contentions notwithstanding this post-accident evidence quite simply does not go to any issue of feasibility or control. The ultimate question to be resolved is the scope of the duty owed by Bobst to Avery as defined by the terms of their contractual relationship. See *Ramcharran v. Carraro Graphic Equipment, Inc.,* 823 F.Supp. 63, 65 (D.Mass.1993); *see also Arthur D. Little International, Inc. v. Dooyang Corporation,* 928 F.Supp. 1189, 1203 (D.Mass.1996) ("the scope of the duty owed from one contracting party to the other is defined by the terms of the contract"). Thus, the issue is not whether Bobst had control over the electronics of press eight consequent to its patent rights, but rather, whether Bobst technicians did or failed to do something within their work assignment, i.e., breached their duty that resulted in injury to the plaintiffs. Similarly, the issue is not whether the work could have feasibly been done in June/July 1994, but again whether it was within the scope of the work assignment and, if so, whether Avery terminated the Bobst technicians prior to the completion of their contract work.

Nor can it be said that this post-accident evidence is relevant on the issue of causation. The plaintiffs point out that:

Pursuant to the Federal Rules of Evidence, testimony concerning subsequent remedial measures is not admissible "to prove negligence or culpable conduct." Fed.R.Evid. 407. However, such evidence is admissible to rebut a defense based upon the nature or condition of the accident scene. See e.g., *Rimkus v. Northwest Colorado Ski Corp.,* 706 F.2d 1060, 1066 (10th Cir.1983) (allowing introduction of evidence of remedial measures taken by a ski resort after an accident); *Kenny v. Southeastern Pennsylvania Transp. Auth.,* 581 F.2d 351 (3d Cir.1978) (holding evidence that new fluorescent fixture was installed soon after rape attack properly admitted to counter defendant's inference that light was adequate), cert. denied, 439 U.S. 1073, 99 S.Ct. 845, 59 L.Ed.2d 39 (1979); *see also* 2 Weinstein and Berger, Weinstein's Evidence P 407[5], at 407–32 to 407–33 (concluding that it would be "manifestly unjust" to deny a plaintiff the right to elicit evidence on remedial measures where the defendant raised a defense involving the nature of the condition at the time of the accident).

In the present case, Pitasi did not seek to introduce Stratton's subsequent remedial measures in order to prove that Stratton was negligent. Rather Pitasi sought to impeach Stratton's witnesses and to rebut its defense that Pitasi was contributorily negligent because the dangerous conditions on East Meadow were so obvious and apparent that warning signs or ropes at the trail's side entrances were unnecessary. Rule 407 clearly allows a plaintiff to introduce evidence of remedial measures to rebut such assertions. *See, e.g., Rimkus,* 706 F.2d at 1066.

*Pitasi v. Stratton Corporation,* 968 F.2d 1558, 1560–61 (2d Cir.1992).

Accepting, *arguendo,* that this is a correct explication of the law, I simply cannot see how records and testimony about services provided by Bobst to Avery over one year after the explosion rebuts the defense that the explosion was caused by inverted fan blades. On the plaintiffs' theory of the case, the Bobst technicians who worked on press eight in June/July 1994 were negligent in that either they did something improperly in their work or that they failed to do something that they should have done. There can

be little doubt that the post-accident repair evidence is being proffered to prove either the technicians' purported negligence and/or their culpable conduct. Such a use is prohibited by Fed.R.Evid. 407.

For the reasons stated, it is ORDERED that the Defendant Bobst Group, Inc.'s Pretrial Motion (Documents And Testimony Re: Post Accident Events) (# 205) be, and the same hereby is, DENIED with respect to Mr. Cartier's report and testimony with respect to it and DENIED as to any findings made by Bobst technicians subsequent to the explosion. It is FURTHER ORDERED that Defendant Bobst Group, Inc.'s Pretrial Motion (Documents And Testimony Re: Post Accident Events) (# 205) be, and the same hereby is, ALLOWED with respect to any post-explosion repairs or adjustments made to press eight by Bobst technicians.